Okay, our final case this morning is number 181261282, Edwin Heimer Group versus United States. Mr. Peterson. Good morning, Your Honor. In more than 200 years of customs jurisprudence, the courts have heard thousands of cases involving denied protests. I believe this is the first case that involves an approved one. But in this case, our client, Erwin... Yes, Your Honor. Let me ask you this question. What's the status right now of the protest? It is allowed or approved, and it is suspended. The allowance of the protest has not been rescinded. Okay, it's suspended. It's suspended, which is not illegal. You have not received a refund? No. Okay. And you have not received a letter of denial? No. It's suspended. It is allowed. It was approved. And in fact, we received, even though it's not necessary, we and the broker received a notice, a mailed notice of the approval of the protest. But it is suspended, correct? It is. Suspended. It hasn't been paid. I mean, that's the problem. It hasn't been paid, and it hasn't been denied. It hasn't been paid. You're waiting for money right now. That's right. But right now, you could also get a denial. I have not. But you could. To what end? Well, to this end. I just wonder whether this court has jurisdiction to be hearing this case. Well, yes, it does, Your Honor, because... And especially under 1581i. Why? Well, I think the Court of International Trade went into that in great detail. The import specialist here made a decision on the merits. It's presumed to be correct. It's entitled to a presumption of regularity. And it's not reviewable on the merits by a court. The CIT has jurisdiction over... If you should get in the mail a letter that says your protest is denied, then you could bring a case against the government at that point, correct? But that would be a denial... Of a protest. Right. But we don't have that. We have an allowance. Yeah, right now, you don't have a denial of a protest, nor have you gotten your money. No. But what I do have is I have an allowance of a protest, which is a statutory action in Section 515. It says the customs shall review a protest and either allow or deny it. Now they allowed it, fine. And then the statute, it's binary. It says if you allow it, refund the money. There's a dispute here whether it's been allowed or denied. There is no dispute, Your Honor, at all. You're claiming that it was allowed. It has been allowed. Okay. And in fact... Yet, you haven't gotten a refund. That's correct. And you could get a letter tomorrow from Customs saying, denied. No, I could not. And the reason for that is Section 515D of the Tariff Act, which was enacted back in 93. Prior to that, the decision on a protest was final. Customs had no power to change an approval or a denial. In 1993, Congress added Section 515D. When a protest is put in suspended state, after that happens, there can be a denial of that. No, there cannot, Your Honor. Suspension is simply not a statutory or a regulatory term. It was suspended because everybody, yourself included, were waiting the outcome of another case. The government elected not to wait. And that's their prerogative. It's not the first protest that's been allowed for this time. That's why it's pending. That's why it was suspended. Because there was another case and everyone was waiting to see how that case came out in order to make a decision on your case. Well, you don't have to wait because the fact of the matter is... I'm saying that's what happened in this case. Well, in this case, there was a case on related issues. We asked, as a matter of administrative convenience, that the government postpone its protest decision. But in this case, they didn't. Okay. So it's pending. You asked the government to suspend its protest decision, waiting for the outcome of the other case. The other case has already been decided, but yet you have not received any notice or any decision as to how that outcome affects your case. It doesn't. I mean... So you're in limbo right now. No, I don't think I'm in limbo. I think what we have is a situation where Customs exercised its power to allow a protest and then simply said, we're not paying it. If they had paid, if they pay you tomorrow, you don't have a case. I would hope this court would order them to do that, yes. No, but you're not answering the question, counsel. I'm not sure I understand. If you get paid tomorrow, then you can't protest, you can't challenge an allowance. Nor would I want to. Right. But you can't. Well, what's happened in this case... And if you did, you'd have to do it under another statute, not 1581i. I don't know why I would protest an allowance, Your Honor. Correct. So you waited to see, let's wait, let's put this on hold. Let's see what's going to happen with the test case. You're okay with that because you could come out good. The government, Your Honor, had a different view. Maybe they felt that the other case had nothing to do with this case. It's a different company, it's a different vehicle, it's a different process. The government agreed that your case was going to be suspended until we received or they received the outcome of the other case. They apparently did not. Without waiting for the outcome of that case, the properly authorized import specialist allowed this protest, which he is within his right to do. And the courts do not have jurisdiction or power to review that decision. He made that decision on the merits. It's an informed decision. The appendix will show you that the protest pattern, all the processes... Let's turn to the merits. Let me ask you a question. Sure. Let's assume that we agree with you, hypothetically, that there was an approval here. Okay. Okay? And why doesn't the agency, before the money is paid out at least, have the authority to reconsider a decision that it thinks is wrong? Well, Section 1515D of the Tariff Act, which was enacted in 1993, was new, and it gave customs the power to set aside the denial of a protest in certain limited circumstances. But it was silent as to setting aside the allowance of a protest. Okay, but your problem with that is that there's a whole slew of Supreme Court cases saying that the fact that the statute gives authority in one circumstance but is silent in another circumstance doesn't mean that the second circumstance is not within the agency's authority. So putting that to one side, putting that statutory provision that you just referenced to one side, is there any doubt that the agency would have the authority to reconsider the approval before the payment? I do not believe they would, because there are cases cited in our briefs which indicate – see, they're claiming inherent authority. Now they haven't exercised any inherent authority. Maybe they have. We have cases saying that agencies have the inherent authority to reconsider. Why wouldn't this agency have the inherent authority to reconsider? Because in 200 years of customs jurisprudence, the law is very clear. 1515d says, you allow or deny. When you make a decision to allow, it then says thereafter you refund any monies found to be due in excess. They made the first part of that decision – I don't think you're answering my question. Put aside the statutory provision that allows reconsideration of the denial of a protest. Let's assume that doesn't exist just for the hypothetical. Wouldn't the agency have the authority to reconsider the approval of a protest? The grant of a protest? They have never done it in over 200 years. For what? Well, as in the American Methil case, which we cited, the courts have held that an agency does not have inherent authority when Congress has spoken to the mechanism for rectifying mistaken actions. That was the American Methil case. You're not accepting my hypothetical. I'm asking you to put that other statutory provision aside. If that didn't exist, isn't it clear that the agency would have the authority to reconsider before the money was paid? I don't believe so. The problem – well, because what happens if the refund is paid? If you take – You're not accepting my hypothetical. My hypothetical is before the refund is paid, wouldn't they have the authority to reconsider? There's nothing in the statute suggesting that. And they have not reconsidered here, which is important. Anything else? Any other reason? Well, because as far as why they would not have the inherent authority? Yes. Well, if you take a look at Section 515D, which speaks to – I asked you to put that aside. All right. I mean, you know, well, there's a fundamental flaw in the lower court's reasoning. The court said that the act of reliquidation was an essential part of granting a protest. It's not. It's a different argument. Okay. Well, Your Honor, if the government has inherent authority to undo a protest once it's been allowed, what's the limit to that? Can they come back and say, you know, we allowed your protest five years ago. We paid you your money. Before the payment is made. Your Honor, payment is a ministerial act. It's a statutory requirement once the protest has been allowed. So if the agency makes a mistake in choosing to approve, allow a protest, whatever word you want to use, realizes maybe it misread your form, misread your protest, and then realizes, oh, we've made a terrible mistake, you know, we need further consideration of this. I guess it's your view that having checked that box, that's it. There's no more discretion, no more evaluation. The calculation of whatever refund, according to that protest, must be done, and then there must be a refund actually paid. Is that your view? I think there has to be. Yes, Your Honor. I think there has to be a finality of administrative action. I think there has to be repose. A few years ago in the Hitachi case, the court held that Customs has unlimited time to consider a protest. I think Judge Rada in his dissent noted that. They've got all the time they want to get it right. Now in this case, they have not proven, they have not alleged any mistake. Nobody ever said that the import specialist got it wrong, nor is it before this court any record on which you could conclude that the import specialist got it wrong. Because what we have is an allowance of a protest. All I'm asking for under the Administrative Procedure Act is that you compel the ministerial act which follows that, which is to refund the money. What the government is asking you to do is to say, well, they get a second chance. And if that was the possibility, speaking to your hypothetical, Judge Dyke, why would the government, when they approve a protest, not sit on it for a long time and say we're not going to pay the money? Because who knows, two or three years from now, a case may come by with a different result and we won't pay. And that's the problem, Your Honor. At that point, and they don't pay, now you can bring a challenger under 1515 and challenge the denial. Well, no, that's exactly what's happened here. They approved, they didn't pay. But there hasn't been no denial. Pardon? There is no denial. If they issue a denial, that's a different case, but they haven't. Right, it's a different case. We have finality. Right, but nothing in 515 says that once Customs has, well, what 515 says is once Customs issues a decision on a protest, allowance or denial, consequences follow. If you allow, refund the money. If you deny, send a notice. And 1515d says you can undo a denial in certain cases, but never an allowance. If you hold otherwise, Your Honor, you break the system. And our precedent for a long time has been that you cannot use residual jurisdiction of the CIT in order to appeal a protest, a denial. Well, that's not what we're doing. We're not appealing the protest. All we're saying is that the protest was allowed and the record shows that. This is an action to compel agency action unreasonably delayed or unlawfully denied under the Administrative Procedure Act. And this court has consistently held that you can bring an i-jurisdiction case grounded in the APA, which is exactly what we've done here. It's no different than many other i-cases, Your Honor. Not one. We're not asking for the protest decision to be touched. It's been made. All we want is the ministerial thereafter part of 515d, which is pay the money. Is the ministerial part of paying the money necessarily following the allowance? Because as I understand the language of 1515a, it talks about after the duties, charge, or exaction found to be assessed shall be remitted or refunded. So to me, it sounds like there has to be a calculation done before the shall of the refund be kicking in. Well, this protest said all the money comes back, and the import specialists agreed with that. So the interest has to be calculated, right? Yeah. That's ministerial. That's ministerial. I guess the point is the refund hadn't truly been calculated at that point. I can tell you, depending on what it is, if I take a look at the entry papers, all the money comes back plus interest. And it's important. The lower court said that reliquidation was an essential part of the process. It's not. You can have a lot of protests, like an exclusion protest, with no reliquidation. Even when a protest results in a refund of money, you don't need reliquidation. In the Swisher case in this court some years ago on harbor taxes, about a billion dollars was paid back on protests without a reliquidation. Your Honor, as I've seen, I've used my time. All right. We'll give you two minutes. Thank you, Your Honor. Ms. Powell? Good morning. May it please the court. In this appeal, Erwin Heimer did not receive an allowed protest under 1515. The record shows that the protest was prematurely sent to Erwin Heimer. And once customs- What's the status of the protest right now? The protest is now suspended. It's pending. It's pending. Yes. Customs cannot act on- How can the CIT have jurisdiction over a pending protest under 15, under this statute, under the residual jurisdiction statute? It was our position below that the court did not have jurisdiction because we had argued that the true nature of plaintiff's, Erwin Heimer's case was that they were challenging whether customs allowed the protest. And our position was that if Erwin Heimer wanted jurisdiction, they should go ahead and file a request for accelerated disposition, then get a denial, and then challenge all of the information, all the decisions that rolled up into that denial. And that was our position below. And what's your position here? It's the same position. It's the same position. But we- You didn't argue that in your brief, right? Because we prevailed, so we sort of indicated it sort of at the end when we made a mention of accelerated disposition. We felt that it wouldn't be proper to raise jurisdiction because we succeeded. So- And- What happens internally in terms of these protests? There's a form which says approved. It doesn't say allowed. Once the form is checked, what happens internally? Once the protest is sent to the import specialist or the review team, the import specialist reviews the protest. And if the import specialist believes it should be allowed or approved, it makes a recommendation. And that recommendation is supposed to go to the supervisory import specialist along with a computation of the duties owed. And that's the process. Then after that, if the supervisor- So what do we have? What's the form here? How does the form that we have here, check, approve, fit into that process? It's sort of the first level of review. It's a recommendation to the second level, to the supervisor. Why is the recommendation to a second level supervisor then forwarded to the import? It was forwarded by mistake. It was forwarded inadvertently. It was supposed to actually go, as the record shows, there's a lot of communication about the missing- So what happens if proper procedure, in your view, were followed? How is the importer notified? Does it get the same copy, the same form? Yes. The importer is notified. So the importer would just receive this form after the proper review had been completed that said it's approved. But the issue would be the timing. According to customs' procedures, the entries are supposed to be set for reliquidation, and then the form goes out. The form doesn't go out before the release date. The importer would know that they received the refund when they got a notice of liquidation and received the money. So they get the money? Yes. Well, they get the form first that said approved, right? Well, we would hope that they get the money first, or the money and the form would come close in time. But the way the liquidation cycles work- But there are two separate mailings, is what you're saying. One is that this form, after proper review- Yes. Yes. Is forwarded to the importer, notifying the importer that the protest has been allowed? The... Okay. The entries are set for liquidation, and then the form is supposed to go out. So I don't know which would hit first, only because liquidations go on a two-week cycle. From what I've been told. So it's possible, I guess, in some instances you might get the form first. But they would know definitively that they got a refund, especially if they- But whichever... Regardless of which comes first. Yes. The normal process, the proper process, would be this particular form, checked approved, would be given to the importer. And then in a separate document, there would be a check. And you're also saying that in the normal course, this form with the box approval checked, would not be sent out and transmitted to the importer until after the reliquidation calculation occurred? Yes. After the reliquidation calculation. So here it was just a mistake, I guess, for number one, according to you, a supervisory import specialist needed to also approve it, not just import specialist Fawaz. Yes. And then in addition to that, another mistake occurred, which was this form went out before any reliquidation calculation occurred. Yes. There's all kinds of mistakes going on here. Yes. Yes. And your argument is that you are entitled to correct the mistake. Yes, we are. We are entitled to correct the mistake. I mean, this can't be the first time this has happened. No, it isn't. This is the first time it's been challenged in court. But there are customs rulings where customs has advised importers that the approval that they have sent has been rescinded or revoked, whatever the language. As a result of a mistake. As a result of a mistake. There's some kind of manual that explains all of this? There is. There is. And I'd like to take the court back just a little bit. This case was brought under 1581I. So in terms of the facts that we were allowed to show, we're confined to the administrative record. So the emails are all we can rely on. But yes, there is a handbook out there. If this was brought under 1581A, a lot of the facts underlying what happened here would have come out. What does the handbook say? The handbook, it's a protest review handbook or something similar to that. But it discusses the processing of protests from the time customs receives it until the end. Is that available online? It is. If you search the internet, it is available online. It's not disseminated by customs, but it is out there. Portions of it are redacted. It's really an internal document. The other thing I wanted to mention was that we just discussed the computation of duties. It's not a ministerial act. There's actually a computation. And in this case, it wouldn't simply be zero computation. Customs is required to give back interest. So there would be some sort of computation of the duties and interest in it if there's anything else owed on the money. The other thing I wanted to mention was that with respect to the inherent power to reconsider, our position is that customs does have the inherent power to reconsider up until reliquidation. At that point is when the importers or protestants' rights attach. At that point, they have a concrete decision. They have an amount, and if they want to challenge all of the reasons for customs' decision, they can do that then. So you're saying if customs realizes that they made some kind of mistake after they have done the reliquidation calculation, customs would be stuck with that mistake? Yes, customs is stuck with that. That is the self-imposed rule because that's when... But is that measured by the payment? You can't reconsider after the payment is made? Yes, after reliquidation. But reliquidation is not the same thing as payment, is it? It's reliquidation and refund. I think reliquidation is most likely the calculation and maybe some sort of computer. I always think of it together, reliquidation and refund. But as a matter of fact, they're two separate actions, right? Reliquidation is the calculation. We owe somebody $1.4 million. Refund is the actual payment of $1.4 million. Yes, I agree. Yes? Well, reliquidation is an official term that signifies the closing of the customs transaction. So once you reliquidate, you don't really have another step that you go to, correct? Reliquidation is reliquidation. Right, reliquidation and then refund. In this case, is there a chance that the plaintiffs could get a refund? Given the court's decision in Pleasure Way, it's unlikely. It's unlikely. Why then has this not been closed and the protest denied? Because they filed a case in the trial court. Once an importer files a case in the trial court, it divests customs of any jurisdiction to act on it. So I can't speak for customs. But given Pleasure Way, it's most likely that's the way the decision, the protest will be decided. So is there jurisdiction here or not in the government's view? Our position is no, there is no jurisdiction. The trial court sort of put the cart before the horse where the trial judge presumed there's an allowance. And if there's an allowance, there's jurisdiction. Maybe the trial court has jurisdiction to determine whether in fact there was an allowance? Because if there was an allowance and you weren't actually paying the refund with the allowance, then they would have some right of review on that. Agreed, agreed. If it was found that there was an allowance and customs did not provide a refund, we would agree most likely there would be jurisdiction. There would be under 1550, not under 1581A. Because then they're challenging a denial of the protest. If it's a denial, it's 1581A. Right, but if there was a... Suppose we were to say that there was no jurisdiction here. Because the ruling is suspended and there's no final decision on the protest. Does that mean that once there's denial of the protest based on this earlier decision, they then can start a new proceeding and come up here again? Yes, if there's a denial, they do have a right to challenge the denial. Go through the whole thing all over again. In the trial court. But then it would be a different posture. I think if we did that right here, we're on the record. If we denied it, they would have to actually go ahead and prove the merits. Right now, we're not here on the merits. So it would be sort of a different proceeding. Are you saying they wouldn't be able to raise their allowance argument? They could raise the allowance argument, but it would be de novo. So we would be able to look at... If they wanted to raise the allowance argument, they could. But we would actually look at the substance of the protest. In this action, we're not looking at the substance of the protest. Wait, wait, wait. The argument would be, if we say we don't have jurisdiction, it has to go back. One argument would be the same argument that they're making now. That the protest had been allowed and that they should receive their money regardless of the merits of the protest, correct? Yes, they most likely would make that argument. And we could consider that. Yes. Most likely, you could consider that argument if it's made. But again, it would be a different case because we'd be litigating the substance. So it would be at least two issues. The allowance approval issue as well as the substance. And if Erwin Heimer is entitled to the money that they want, then they should be able to prove it at the trial court. If under 1581A. Here, there's really been no decision as to whether they're entitled to the money. This is sort of a mistake that's being, for lack of a better term, taken advantage of. If Erwin Heimer is truly entitled to the duties, they can file accelerated disposition. If they were to dismiss the appeal hypothetically on the ground that there was just no final decision on the protest, the protest remains suspended. And we reached that conclusion necessarily because we determined that whatever was argued as being an allowance was never really an allowance or the customs was permitted to reconsider that allowance and then put the protest into suspension. And so therefore, there was no jurisdiction. We would have necessarily reached a conclusion about the merits of Erwin Heimer's allowance theory. And then would they be collaterally stopped from raising that after the denial eventually comes down the pike on the protest? Yes, if this court actually renders a decision on the issue of allowance under 1515, the legal decision, the legal issue, yes. They would be precluded just by virtue of this being an appellate court. Again, assuming hypothetically we find that there is no jurisdiction, then the plaintiffs can raise the same issue they brought to us before. They can raise it once they receive a denial, if they get one. Once they receive a denial, and then they have their day in court there. And there's nothing that's collaterally stopped at that point because we just never did have jurisdiction to begin with. I guess it really depends. If the court actually makes a determination, like a legal ruling and interprets 1515, and then makes a decision that the court doesn't have jurisdiction. Well, we couldn't do that. I mean, if we have no jurisdiction, we can't make a ruling on 1515. We either have jurisdiction or we don't. Okay, so under those circumstances, yes. If the court found that there was no jurisdiction and an accelerated disposition was filed, there was a denial, then all the issues can be raised in an action. Okay, all right. Thank you, Ms. Powell. Thank you. Mr. Peterson, you have two minutes. Thank you. Two points, briefly. First of all, there seems to be a supposition that there's something wrong with this allowance on the merits. There's not. And the court, with all respect, does not allow to assume that there is. It's an allowed protest. There are allowed protests that occur in this country every day. And because they are allowed instead of denied, they never come before the courts. And that is also why the CIT had high jurisdiction here, because I was dealing with an allowed protest. Now, Judge Moreno is correct, where he says you can't use I-jurisdiction to get around something you could do with A-jurisdiction. But A-jurisdiction only deals with the denied protest, so I had no path to court through A. And if they were to come back and deny this protest, and I filed a new protest, my first ground would be that the second decision is invalid because the first decision in this allowance governs. Very important. You can't assume there's anything wrong with what import specialists for WA did. Nor can you assume that the Pleasure Way case changes that. Because in 1927, the Supreme Court in U.S. v. Stone and Downer told us there's no res judicata in these cases. Every case stands alone on its own facts. So regardless of what the decision was in Pleasure Way, it makes it neither more nor less likely that this decision was correct. This is rendered as just not judicially reviewable. And that's important. My second point is, during her presentation, my learned colleagues started arguing that the term approved on the protest was like approved to go ahead to some supervisor. Well, there's nothing in the record about that. And in fact, if you take a look at paragraph 13 of their answer, they admit that the protest was allowed using the statutory language. Now, they talk about the form. The form uses the word approved instead of allowed. But earlier this year in a ThyssenKrupp case, this court was called upon to interpret form language that didn't match the statutory choices. That was language that said rejected is non-protestable. And the government took the position, oh, that means the protest is still pending. This court said, no, it means that protest was denied. So you breathed statutory meaning into that box on the form. And as the protest form stands now, the only box that doesn't have statutory match is that approved box. And I think this court has to hold that that means allowed, and this protest was allowed. Thank you, Mr. Peterson. Thank you, Ms. Powell. The case is submitted. That concludes our session for this morning.